UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KIMBERLY CARROLL,                    )        CASE NO. 1:09CV2580
                                     )
              Plaintiff,             )
                                     )        MAGISTRATE JUDGE
                                     )        GEORGE J. LIMBERT
       v.                            )
                                     )
MICHAEL J. ASTRUE,                   )        **MEMORANDUM OPINION**
Commissioner of Social Security,     )        **AND ORDER**
                                     )
              Defendant.             )
                                     )

       Kimberly Carroll ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue

("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her

applications for Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  For the following reasons,

the Court REVERSES the Commissioner's decision and remands the instant case for further

proceedings:

**I.    PROCEDURAL HISTORY**

       On May 20, 2007, Plaintiff filed an application for DIB.  Tr. at 52-53.  The SSA denied

Plaintiff's claim initially and on reconsideration.  *Id*. at 44-46, 40-43.  Plaintiff filed a request for

hearing before an administrative law judge ("ALJ") and on December 30, 2008, an ALJ conducted

a hearing where he received testimony from Plaintiff and Hershel Goren, M.D., a medical expert.

Tr. at 38, 339-73.  Plaintiff was represented by counsel.  *Id*.

       On May 22, 2009, the ALJ issued an unfavorable decision, finding that Plaintiff was not

disabled.  Tr. at 8-18.  Plaintiff requested review of the ALJ's decision by the Appeals Council, but

on September 1, 2009, the Appeals Council denied her request for review.  *Id*. at 3-6.  On November

4, 2009, Plaintiff filed the instant suit.  ECF Dkt. #1.  On May 2, 2010, Plaintiff filed a brief on the

merits.  ECF Dkt. #15.  On June 2, 2010, Defendant filed a brief on the merits.  ECF Dkt. # 16.  On

June 30, 2010, Plaintiff filed a reply. ECF Dkt. #18.

## II.  SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from disorders of the back and neck, which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c), 416.920(c). Tr. at 12. The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform all basic work activities described in 20 C.F.R. § 404.1521, 404.1545, 416.921, and 416.945, within the following parameters: she can lift, carry, push or pull up to 10 pounds frequently and up to 20 pounds occasionally, and she can sit with normal breaks for six hours in an eight-hour period; and she can occasionally climb/descend ramps or stairs; and she can occasionally stoop, crawl, crouch and kneel, but she is not able to work on unprotected heights or on ladders, ropes or scaffolds. Tr. at 14. The ALJ ultimately determined that Plaintiff was able to perform her past relevant work as a day care operator and was, therefore, not disabled. *Id*. at 17-18

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

-2-

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).   Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion.  *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole.  *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.    ANALYSIS

### A.    TREATING PHYSICIAN

Plaintiff contends that the ALJ erred in discounting the opinions of David J. Hart, M.D.  ECF Dkt. #15 at 12.  The ALJ reasoned that the opinions were "inconsistent with the opinions of the medical expert and state agency reviewing physicians" and  were "not supported by the record as a whole."  Tr. at 17.  Plaintiff contends the ALJ failed to specifically explain his assertion or include

examples.  ECF Dkt. #15 at 12-13.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 C.F.R. § 404.1527(d)(2); 416.927(d)(2).  If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record.  20 C.F.R. § 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544, quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The Sixth Circuit has held an ALJ's finding that a treating source's opinion is "inconsistent with the overall evidence of record," can constitute a good reason for giving a treating physician's opinion less than controlling weight. *Smith v. Comm'r Soc. Sec.*, 482 F.3d 873, 875-77 (6th Cir. 2007). The *Smith* court determined that such a conclusion constitutes a factual determination within the ALJ's discretion under § 404.1527(d)(2). *Id.* Notably, in *Smith*, the treating physicians formed their opinions solely from the claimant's reporting of her symptoms and her conditions, and the ALJ found that she was not credible. *Id.*

At first glance, a direct application of the holding in *Smith* may appear to mandate affirmation of the ALJ's decision in this case because he concluded that the "treating source's opinions are not supported by the record as a whole." Tr. at 17. However, the Court finds *Smith* to be distinguishable for several reasons. The Court will address each of these issues in turn.

### i.      Weighing opinions

The ALJ's rationale fails to apply the proper standard, which requires him to give Dr. Hart's opinions controlling weight if the opinion was "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Instead of determining whether Dr. Hart's opinions were entitled to controlling weight under 20 C.F.R. § 404.1527(d)(2), the ALJ simply proceeded to weigh his opinion against the opinions from Dr. Goren and the reviewing physicians:

> Among all the medical source opinions in this record, the greatest weight is given to Dr. Goren's opinion because he was the only medical source who had the opportunity to review the full documentary record and hear Ms. Carroll testify and ask Ms. Carroll questions. Dr. Goren is also board-certified; his testimony was subject to cross-examination; he had the opportunity to expound on the reasons supporting his opinion; and his opinion was consistent with the opinion of the state agency physicians who reviewed the record. In assessing Ms. Carroll's residual functional capacity, lesser weight is given to the residual functional capacity opinions offered by the surgeon who operated on Ms. Carroll's back on December 21, 2006. *Besides being inconsistent with the opinions of the medical expert and state agency reviewing physicians*, *this treating source's opinions are not supported by the record as a whole.*

Tr. at 17 (footnotes omitted, emphasis added). The ALJ never engaged in the appropriate analysis under 20 C.F.R. § 404.1527(d)(2). He did not even cite this Regulation or the applicable Social Security Ruling, 96-2p. The Court simply has no assurance that the ALJ properly considered whether Dr. Hart's opinion was entitled to controlling weight. Even if he did appropriately

determine that the opinion was not entitled to controlling weight, the ALJ's decision gives

absolutely no indication that he ever considered the factors set forth in 20 C.F.R. § 404.1527(d)(2)-

(6).

The Southern District of Ohio has considered a very similar inadequacy and determined that

the ALJ's error required reversal:

> The ALJ did not state, or even hint, that he first considered Dr. Patel's opinion under the treating physician rule. See *id.* And the ALJ failed to indicate that once he declined to apply the treating physician rule to Dr. Patel's opinion, he continued to weigh Dr. Patel's opinion under the remaining regulatory factors. See *id.* The continued-weighing requirement is particularly essential because "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its noncontrolling status notwithstanding." *Rogers*, 486 F.3d at 242. Without assurance that the ALJ weighed Dr. Patel's opinion using this procedure under these legal standards, the ALJ's decision does not comply with the Regulations. 20 C.F.R. § 404.1527(d)(2)-(6); see *Rogers*, 486 F.3d at 242; see also *Wilson*, 378 F.3d at 544-45.

> The ALJ's only possible reference to a regulatory factor arises in his finding that Dr. Patel's opinion was inconsistent with those of four state agency reviewing physicians. Yet, in the context of the ALJ's decision in this case, his "inconsistency" finding does not reveal that he weighed Dr. Patel's opinion as the Regulations require. If the ALJ meant that inconsistency provided a reason for not applying controlling weight under the treating physician rule, then the ALJ erred as a matter of law by not continuing to weigh Dr. Patel's opinion under the remaining regulatory factors. Or, if the ALJ's inconsistency finding constituted an application of the "consistency" factor in § 404.1527(d)(4), the ALJ failed to first consider whether the treating physician rule applied.

> Perhaps-as the Commissioner essentially urges-the ALJ found the single reason of "inconsistency" as a sufficient basis for both (1) not fully crediting Dr. Patel's opinion under the treating physician rule and (2) not placing any weight on Dr. Patel's opinion under the remaining regulatory factors. The ALJ's decision, however, contains no language indicating this analytical intention or meaning, and its omission deprives the ALJ of a good explanation for rejecting treating physician Dr. Patel's opinions-an error of law under the Regulations and caselaw. See 20 C.F.R. § 404.1527(d)(2); see also *Rogers*, 486 F.3d at 242-43.

> Turning to other medical sources, the ALJ did not weigh the four state agency physicians' opinions under the factors of the Regulations. See Tr. 24-25. This constituted an error of law because the Regulations mandated the ALJ to weigh those opinions "using relevant factors" including supportability, consistency, and specialization. 20 C.F.R. § 404.1572(d), (f)(2)(ii).

*See Barcelona v. Astrue*, No. 3:06CV382, 2008 WL 321306 at *5 (S.D.Ohio Feb 1, 2008)

unreported.  The analysis set forth in *Barcelona* clearly applies to the facts of this case because the

ALJ did not conduct the proper two step analysis and there is no indication that he ever considered

the appropriate factors in discounting Dr. Hart's opinion.

Even presuming that the ALJ's analysis constitutes an attempt to determine if controlling weight was mandated under 20 C.F.R. § 404.1527(d)(2), the Court finds that the ALJ's determination is not supported by substantial evidence. The first prong of the 20 C.F.R. § 404.1527(d)(2) test is not in dispute because the ALJ made no finding that Dr. Hart's opinions were not well supported by medically acceptable clinical and laboratory diagnostic techniques. The deficiency in the ALJ's analysis lies in the second prong. Rather than determine if Dr. Hart's opinion was entitled to controlling weight, the ALJ proceeded directly to weighing all of the medical opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The ALJ failed to acknowledge that, generally, "The testimony of [a medical expert] cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians since 'the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Sixth Circuit has subsequently clarified that "the [treating physician] rule does not instruct an ALJ to compare the consistency of treating and examining physicians' opinions to each other. Instead, the [treating physician] rule instructs an ALJ to compare the consistency of a physician's opinion to the *record as a whole*." *Coldiron v. Commissioner of Social Security,* 391 Fed.Appx. 435, 441-42, 2010 WL 3199693 at **6 (6th Cir. Aug. 12, 2010), unreported (emphasis in original).

The ALJ's decision in this case does nothing more than pit Dr. Hart's opinion against opinions rendered by non-treating physicians. It was improper for the ALJ to treat the opinions of non-treating physicians as a basis for rejecting Dr. Hart's opinions. *See Shelman*, 821 F.2d at 321.

The ALJ's decision only arguably includes a reference to other substantial evidence in the case record by indicating that Dr. Goren was the only medical source who had an opportunity to review the full documentary record. The Court's concern focuses on whether the ALJ has properly determined that evidence contained in the full documentary record forms an adequate basis for determining that Dr. Hart's opinion was inconsistent with other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ's reference to Dr. Goren's opinion, which was based on additional evidence, may arguably serve as a reference to the additional evidence itself.

-7-

Even if the Court were to undertake such a liberal reading of the decision, the ALJ's reasoning fails to establish any inconsistencies between Dr. Hart's opinion and the evidence Dr. Hart did not consider.

There is no indication in the ALJ's decision that he considered the significance of the medical records generated after Dr. Hart rendered his opinions. Under the ALJ's articulated rationale, the mere existence of subsequent medical records – apparently, irrespective of their contents – enables him to afford Dr. Goren's opinion the greatest weight because Dr. Goren was the last to review the record. This rationale must fail because the ALJ has simply placed more weight on Dr. Goren's opinion based upon his role as a medical expert, without giving specific consideration to significance of the additional evidence that Dr. Goren considered. This result clearly ignores the dictates of the treating physician rule.

This Court has previously held that:

> any time a medical expert is consulted, he or she will most likely be the last physician to review the medical evidence. Although it may be valid to consider the fact that each medical doctor has reviewed different parts of the record, to hold that the medical expert's cumulative review of the record is alone sufficient to outweigh a treating physician's opinion would practically eviscerate the treating source rule.

*Warshaw v. Commissioner of Social Sec.*, No. 2:08CV2803, 2010 WL 301828, *7 (N.D. Ohio Jan. 19, 2010), unreported. As in *Warshaw*, the ALJ here has merely attempted to reject a treating physician's opinion based upon a generic recitation of qualities common to most medical experts. The ALJ's rationale fails because he provides no indication that he ever considered the gravity of the evidence that was not before Dr. Hart at the time he authored his decisions. The ALJ's rationale merely places more weight on Dr. Goren's *opinion*, without giving consideration of the evidence underlying it.

### ii. Sufficiency of ALJ's finding that Dr. Hart's opinion was not *supported* by the record as a whole

The ALJ found that Dr. Hart's opinion was "not supported" by the record as a whole. Tr. at 17. The *Smith* court determined that it was sufficient for an ALJ to determine that a treating physician's opinion was "inconsistent" with the record as a whole. *Smith*, 482 F.3d at 875-77. Social Security Ruling 96-2P demonstrates that the terms "not supported" and "inconsistent" are *not*

synonymous:

> <u>Not inconsistent.</u> **This is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence** (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion.

SSR 96-2P (emphasis added). The explicit language of SSR 96-2P, emphasized above, conflicts with the ALJ's conclusion that Dr. Hart's opinion was "not supported by the record as a whole." Further, by failing to address an inconsistency with evidence of record, the ALJ in this case, unlike the ALJ in *Smith* fails to reach the determinative issue of whether those opinions contradict or conflict with other substantial evidence. Therefore, the holding in *Smith* does not apply. This means that the ALJ's finding regarding the record as a whole is inadequate to satisfy the inconsistency consideration set forth in 20 C.F.R. § 404.1527(d)(2).

Of note, the Court also finds the ALJ's credibility determination fails to meet the substantial evidence standard, as discussed in subsection (B) below. Accordingly, the ALJ's comparison of Dr. Hart's opinion to the record as a whole lacks support of substantial evidence, irrespective of any distinction between the phrases "not supported" and "inconsistent."

### iii.    Misinterpretation of the record

The ALJ elected to give the medical expert's opinion more weight because he was the only medical source who had the opportunity to "review the full documentary record and hear Ms. Carroll testify and ask Ms. Carroll questions." Tr. at 17. The Court acknowledges that the ALJ's decision is somewhat confounded because the word "opportunity" could modify the phrase "ask Ms. Carroll questions." It is not clear whether the ALJ was using the word "opportunity" to modify the clause "ask Ms. Carroll questions" or whether he was asserting that Dr. Goren actually asked her questions.

If "opportunity" does not modify the phrase "ask Ms. Carroll questions", then the ALJ's assertion is factually incorrect. Dr. Goren did not ask Plaintiff any questions. *See* Tr. 341-73; Tr. at 367(Q, by ALJ: "Do you [Dr. Goren] have any questions you'd like to ask the claimant?" A: "No."). Further, even though Dr. Goren was present at the hearing, his testimony exemplifies that his opinion was not based on his direct observations of Plaintiff or her testimony:

-9-

> Q:      Okay, lifting, how did you come to the conclusion she could lift 20 pounds occasionally?
>
> A:      From my knowledge of the medical literature.  I would have been favorably impressed if I had seen a functional capacity evaluation, such as this carried out by physical therapist for example, in the - -
>
> Q:      Okay.
>
> A:      workers compensation system.  I did not see that so I know that the medical literature indicates that people with this kind of problem can lift either at the light level or the medium level, so I went with the light level.

Tr. at 371.  Dr. Goren's testimony was clearly based on a generalized reference to medical literature, and not based on any direct knowledge gleaned from Plaintiff's testimony.  Further, Dr. Goren specifically stated that his opinion was based upon a reading of the record:

> There is a severe impairment related to 104, from my reading of the record, my knowledge of the medical literature, this would not meet or equal any listings, either individually or in combination.  The claimant would be restricted as follows: lift or carry 20 pounds occasionally or 10 pounds frequently.

Tr. at 369.  The Court finds that the ALJ's reasons for adopting Dr. Goren's opinion are inadequate.  Contrary to the ALJ's assertion, Dr. Goren's opinion was not based on a consideration of Plaintiff's hearing testimony.

Even the if "opportunity" does modify the phrase  "ask Ms. Carroll questions" and the ALJ did not erroneously interpret the record, his reliance on Dr. Goren's *opportunity* to hear Plaintiff's testimony and to ask questions does not constitute an adequate basis for discounting Dr. Hart's opinions.  Perhaps the most telling reason lies in what Dr. Goren did not include in his testimony.  Dr. Goren made no mention of Plaintiff's testimony in his opinion.  Tr. at 367-71. For example, Dr. Goren specifically stated that he arrived at a 20 pound occasional lifting capacity because "the medical literature indicates that *people with this kind of problem* can lift either at the light or the medium level. . ." Tr. at 371 (emphasis added).  This conclusion had no apparent connection to the hearing testimony.  Likewise, he asked no questions, even when prompted by the ALJ.  *Id*.  The Court fails to see how the ALJ can afford greater weight to Dr. Goren simply because he had the *opportunity* to hear Plaintiff testify and ask questions, but he did not indicate that he considered her testimony in rendering his opinion and he did not find it necessary to ask any additional questions.

-10-

Dr. Goren's opportunity to hear Plaintiff's testimony and his opportunity to ask questions cannot be afforded any meaningful significance. In light of the facts of this case, the ALJ's rationale simply functions to place more weight on Dr. Goren's opinion based upon his role as a medical expert and his physical presence at the administrative hearing. This result runs contrary to the treating physician rule and cannot withstand this Court's scrutiny. Accordingly, the ALJ's decision is also reversed based on his deficient explanation that Dr. Goren had the opportunity to hear Ms. Carroll testify and ask Ms. Carroll questions.

### iv.    Harmless error analysis

The Sixth Circuit has held that the good reason requirement "does not require conformity at all times" and such a failure amounts to harmless error:

> if the ALJ has met the goals of the procedural requirement-to ensure adequacy of review and to permit the claimant to understand the disposition of his case-even though he failed to comply with the regulation's terms. *Id.* [*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)]. An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.

*Coldiron*, 2010 WL 3199693 at *4, citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470-472 (6th Cir. 2006) and *Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x 456, 464-465 (6th Cir. 2005).

Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the Court not reverse a case where ALJ failed to observe the requirements for evaluating the weight given to a treating physician. *Wilson*, 378 F.3d at 547. The Sixth Circuit stated in *Rogers*:

> Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers*, 486 F.3d at 243. Since Dr. Hart's opinion in the instant case is not "patently deficient" such that it could not be credited, and since the ALJ failed to indicate that he considered all necessary factors and failed to articulate the weight given to Dr. Hart's opinion, the Court reverses and remands this case for the ALJ to reconsider Plaintiff's RFC and properly apply the treating physician rule to Dr. Hart's opinion and RFC assessment. *See Potter v. Astrue*, No. 3:09CV169, 2010 WL

2679754, at *9 (S.D. Ohio June 2, 2010, citing *Rogers*, 486 F.3d at 246.)("Despite citing some reasons for discounting Dr. Gollamudi's opinion, then, ALJ Armstead never fully explained how those reasons affected the weight he gave to Dr. Gollamudi's opinion, or even what weight he ultimately accorded that opinion.").

### B.      Credibility Assessment

Plaintiff also contends that the ALJ erred in assessing her allegations of disabling pain.  ECF Dkt. #15 at 17.

The social security regulations establish a two-step process for evaluating pain.  *See* 20 C.F.R. § 404.1529 , SSR 96-7p.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.  *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986).  Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See id.*  Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than

medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In this case, the first prong is satisfied because the ALJ determined that Plaintiff had severe disorders of the back and neck which could "reasonably be expected to cause some of the symptoms she has complained of such as pain and weakness in her back and lower extremities," and her "medically determinable impairments can reasonably be expected to interfere with lifting and some postural movements. . ." Tr. at 12, 16. Therefore, the remaining question concerns the ALJ's credibility determination related to Plaintiff's complaints of pain:

> the undersigned concludes that Ms. Carroll's allegations of intensity, persistence and functionally limiting effects of her impairments since the June 23, 2006 alleged onset date are not substantiated by the objective medical evidence and non-medical evidence in this record, and, thus, are not entirely credible.

Tr. at 16. The ALJ reasoned that Plaintiff has been able to engage in a fairly wide range of activities since the June 23, 2006 alleged onset date. Tr. at 16-17. The ALJ offered no explanation of how these activities were inconsistent with Plaintiff's allegations of debilitating pain. Instead, he merely footnotes some records documenting her daily activities. "The ALJ must. . . do more than say the testimony is not credible based on generalities or merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain." *McKinney v. Commissioner of Social Security*, No. 08-10624, 2009 WL 877668 at *9 (E.D.Mich. Mar. 30, 2009) citing *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir.1994).

The activities upon which the ALJ relies present no apparent inconsistencies with Plaintiff's allegations. Plaintiff stated that she dresses herself, walks her daughter to the bus stop, changes her clothes with help, and bathes three times per week. Tr. at 75-76. She stated that she is unable to wash her daughter, bend to pick up or put down dog dishes, or shave her legs. *Id.* She also stated

-13-

that her 16 year old son cooked all meals. *Id*. at 76.  The consultative psychologist's report and Plaintiff's testimony to which the ALJ also cited is generally consistent with Plaintiff's function report.  *See* Tr. at 177-79, 341-73.

The Court fails to see any inconsistency between Plaintiff's activities of daily living and her allegations of pain.  The ALJ has offered no explanation for his conclusion.  He has merely cited evidence of record and stated a conclusion.  Where that evidence does not clearly present inconsistencies, the Court cannot determine that the ALJ's decision is supported by substantial evidence in this regard.

The ALJ also reasoned that Plaintiff's complaints were not consistent with the medical expert's opinion or with the opinions of the state agency medical consultants. Tr. at 17.  Of note, the ALJ made this comparison without ever considering if Dr. Hart's opinion was entitled to controlling weight.  The ALJ could not discredit Plaintiff's allegations based upon medical opinions that he improperly weighed.

Lastly, the ALJ reasoned that Plaintiff's medications had no significant side effects and:

even though the record shows that Ms. Carroll has had back surgery and a spinal cord stimulator implanted since June 23, 2006, and although the record shows that Ms. Carroll has used oral analgesics, anti-inflammatory medications, muscle relaxants, a TENS unit, and pain medication injections since June 23, 2006, there have been few significant ongoing objective findings with respect to her medically determinable impairments since June 23, 2006.  For example, as has already been noted in the Finding 4 discussion, there is no evidence of ongoing and significant sensory, reflex or motor loss in the upper or lower extremities.  There is also no evidence of muscle wasting/atrophy in the upper or lower extremities.

Tr. at 16 (footnote omitted).  The ALJ cannot reject a claimant's complaints about the intensity and persistence of pain or other symptoms solely because the available objective medical statements do not substantiate the claimant's statements.  20 C.F.R. § 404.1529(c)(2); *Blankenship*, 874 F.2d at 1123 ("Objective evidence of the pain or other subjective symptoms is not required.").  Therefore, even if the Court were to consider this reason to be supported by substantial evidence, it constitutes an insufficient basis for discounting Plaintiff's credibility.

Because the ALJ offered no explanation with respect to Platiniff's activities of daily living and he compared her allegations to medical opinions that he improperly weighed, the Court reverses his decision related to his determination that Plaintiff's allegations of intensity, persistence and

-14-

functionally limiting effects of her impairments since the June 23, 2006 alleged onset date are not substantiated by the objective medical evidence and non-medical evidence in this record, and, thus, are not entirely credible.

### C.    Whether Plaintiff can return to her past relevant work

Plaintiff articulates an error based on the ALJ's decision that she can return to her past relevant work.  ECF Dkt. #15 at 8.  However, she offers no argument in support.  Nevertheless, the Court cannot reach this issue in light of the conclusions reached above.  Further, depending on the ALJ's determinations on remand, he may need to reconsider his Step 4 findings and perhaps proceed to Step 5.  Accordingly, the Court will not consider this claim.

## VI.    CONCLUSION

For the foregoing reasons, the Court  REVERSES the ALJ's decision and REMANDS the instant case to the administrative law judge for further proceedings consistent with this opinion.


DATE: January 28, 2010                              */s/George J. Limbert*
                                                    GEORGE J. LIMBERT
                                                    UNITED STATES MAGISTRATE JUDGE

-15-